THE ILLINOIS STEEL COMPANY

*v.*

CLINTON B. SAYLOR, Admr.

*Opinion filed February 21, 1907—Rehearing denied April 10, 1907.*

1. APPEALS AND ERRORS—*when judgment of the Appellate Court must be affirmed.* Where the only error assigned is upon the trial court's refusal, in a personal injury case, to direct a verdict for the defendant, the judgment of the Appellate Court affirming a judgment for the plaintiff must be affirmed by the Supreme Court if there is any competent evidence in the record fairly tending to support the plaintiff's cause of action.

2. TRIAL—*when refusal to direct a verdict is proper.* In an action for the death of an employee of a steel company, caused by an explosion due to a "break-out" in a blast furnace, whereby molten metal escaped and came in contact with water, it is proper to refuse to direct a verdict for the defendant where the proof shows that the furnace had been standing for about sixteen years, that it was under the control of the defendant, had not been "blown out" for inspection for about a year, that the deceased had no means of knowing of the condition and was not responsible therefor, even though it also appears that the "break-outs" were likely to occur in new furnaces as well as old, and that there was no certain way of anticipating them or determining their cause.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding.

John H. Garnsey, (Knapp, Haynie & Campbell, of counsel,) for appellant.

W. W. Stevens, and P. Shutts, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

This is an action on the case brought by Clinton B. Saylor, administrator of the estate of Charles J. Saylor, deceased, against the Illinois Steel Company, to recover damages on account of the death of his intestate, alleged to have been caused by the negligence of appellant, December 13, 1903, while deceased was working about appellant's blast furnace No. 3. The declaration contains two counts. The first alleges that the defendant carelessly and negligently failed to keep the said furnace in safe condition and repair. The second, "that defendant carelessly and negligently failed to keep the said blast furnace in safe condition and repair, but, on the contrary, then and there carelessly and negligently per-mitted the said furnace to become and be defective and unsafe and in a bad and dangerous condition." A plea of the general issue was filed, the case tried before the court and jury and a verdict and judgment for $5000 was rendered. An appeal was taken from that judgment to the Appellate Court, where the judgment of the circuit court was affirmed, and the case is brought here by appeal.

Deceased was at the time of his death, and for about nine years prior thereto had been, employed by appellant as a pipe-fitter or pipe-fitter's helper. His work was to fit and change water pipes and tuyeres or blast pipes, to look after water connections, and, in a general way, the circulation of the water through the walls and pipes of the furnace. Blast furnace No. 3, about which deceased was employed, had been standing for sixteen or seventeen years. Said furnace, as constructed, consisted of a floor of fire brick about two feet thick, laid at the bottom of an excavation two or three feet

below the ground surface, upon which was erected a jacket
of steel one and one-half inches thick. The jacket is circu-
lar in shape, nineteen feet in diameter, and extends above
the ground surface about four feet. The floor of the hearth,
within the jacket, is of fire brick about two feet thick, and
above the floor of the hearth, for the height of four and a
half feet, a wall of fire brick is carried up three and a quar-
ter feet thick, and for about five feet more at a thickness of
thirty-three inches. Above the hearth is what is known as
the "bosh," built of fire brick and extending upward about
twenty feet, slanting outward. Within the bosh are hollow
cooling plates, through which water circulates. The stack
is about sixty feet high, built upon a steel mantel supported
by columns. The stack is built of brick and lined with fire
brick. The furnace is filled from above, and when a cast is
made the metal is taken out through the tapping hole, about
two feet above the ground surface of the furnace. During
the operation of the furnace the heat is from 2600 to 3000
degrees, the air blast being forced into the furnace through
blast pipes about ten feet above the hearth, the melting point
being above them. The water which circulates through the
cooling plates falls to the top of the jacket and runs over the
sides, keeping it constantly wet and cool, and is carried off
by a ditch or sewer running around the base of the jacket.
The proof shows that during the operation of the blast fur-
nace the heavier portions of the iron, such as carbon, graph-
ites and silicates, collect in the bottom of the furnace, and by
some chemical action the fire brick gradually disappear or
fuse with the iron and become a very hard substance, called
"salamander." The proof shows this salamander is consid-
ered a better lining than fire brick, because it can withstand
a higher degree of heat. On the 13th day of December, about
noon, there was what is known as a "break-out," and about
ten or fifteen tons of molten metal escaped through the bot-
tom part of the furnace, either through the lower part of the
jacket on the side or down through the bottom of the hearth,

and came up through the ground. It spread about the floor in the vicinity of the furnace, and a portion of the molten metal coming in contact with the water, caused a violent explosion. Deceased was seen at his work around the furnace only a few minutes before the explosion, and a few minutes after the explosion was found eight or ten feet from the furnace, dead. His body was badly burned and was lying under a piece of iron roofing that had fallen from above through the force of the explosion.

At the close of plaintiff's evidence, and at the close of all the evidence, appellant entered its motion for the court to instruct the jury to return a verdict finding the defendant not guilty. These motions were refused, and the rulings of the court refusing them are assigned for error. By the terms of the statute all controverted questions of fact are settled by the verdict of the jury and judgment of the Appellate Court, and by this assignment of error the only question raised in this court is whether there is any competent evidence in the record fairly tending to support the plaintiff's cause of action. *Chicago City Railway Co.* v. *Martensen,* 198 Ill. 511; *Ackerstadt* v. *Chicago City Railway Co.* 194 id. 616; *Metropolitan Elevated Railway Co.* v. *Fortin,* 203 id. 454.

The proof showed that the break-out was below the surface of the ground, but whether it was through the bottom of the furnace or through the side above the bottom is not shown by the evidence. It appears from the testimony the place of the break-out was repaired by the metal itself by the formation of salamander, and after its occurrence no repairing was necessary. According to the testimony of two witnesses of experience with blast furnaces, break-outs were liable to occur not only in old furnaces, but in new ones also. It was testified to that they could not be foreseen nor their causes determined. The salamander lining, according to the evidence, is regarded as the best lining known. From these circumstances it is argued that the court should have directed

a verdict because the proof failed to support the charge of negligence in the declaration.

Mr. Mallette, who was superintendent of furnaces for appellant at the time of the accident and who had had twenty years' experience in the furnace business, testified that there was no means of determining the thickness of the salamander formation that took the place of the brick, and that this was usually left to chance. He further testified that constant use and continuous blasts in the course of time wear out the bottom of the furnace. The evidence tended to show that the average life of the brick lining of a furnace like the one in question is about two years; that this furnace had been standing sixteen or seventeen years and that it had not been blown out for repairs for about a year before the accident; that casts of from fifteen to twenty tons were made every four hours, with a heat of from 2600 to 3000 degrees, and that break-outs of more or less serious nature had before that time occurred at this furnace. The evidence further tended to show that when the last repairs were made before the accident the brick work was gone and that iron had taken its place, and that in making the repairs no attempt was made to see how thick the bottom of the hearth was. The evidence also tended to show that deceased had no control or management of the furnace further than to look after the water connections as he was directed by others, and had no means of knowing the condition of the furnace. The assistant superintendent testified that when the break-out occurred the metal came up through the ground and must have come out through the salamander or some place under the jacket, and coming in contact with the water caused the explosion. Under all the evidence we think the court was justified in submitting the question of defendant's negligence to the jury.

No question is raised as to the admission or rejection of testimony or the giving or refusing of instructions.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*